UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALLY E. RICHARDSON,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>　　　　　Defendant. | Case No. CV 11-1593-SP<br><br><br>MEMORANDUM OPINION AND<br>ORDER |

**I.**

**INTRODUCTION**

On February 23, 2011, plaintiff Sally E. Richardson filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly determined, at step five, that plaintiff could perform other work; and (2) whether the ALJ properly discounted plaintiff's credibility. Joint Stipulation ("JS") at 4.

Having carefully studied, inter alia, the Joint Stipulation, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred at step five. Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-seven years old on the date of her November 17, 2008 administrative hearing, has an associate's degree in general science and received training as a medical assistant. AR at 102, 133, 237. Her past relevant work includes employment as a medical assistant and ophthalmic technician. AR at 139.

On August 25, 2006 and September 11, 2006, plaintiff filed applications for DIB, alleging a period of disability from August 25, 2006 through December 31, 2010, the date last insured, and SSI, due to carpal tunnel, wrist and ulnar pain, cervical pain, and thorocolumbar strain. AR at 17, 102-11, 125, 129. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which she filed a request for a hearing. AR at 52-55, 57-61, 64.

On November 17, 2008, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 25-46. The ALJ also heard testimony from Sharon Spaventa, a vocational expert. AR at 43-46. On December 18, 2008, the ALJ denied plaintiff's claim for benefits. AR at 14-24.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity since her alleged onset date of disability, August 24, 2006. AR at 19.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: multi-level disc bulging and cervical spondylosis; migraine headaches; osteoarthritis of the lumbar spine; and right upper extremity median neuropathy. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). AR at 20.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and determined that she had the RFC to perform light work with the following limitations: "frequent but not constant gross and fine manipulation with the bilateral upper extremities; no overhead reaching bilaterally; and no neck posturing at the extreme end range of motion." AR at 20.

The ALJ found, at step four, that plaintiff was incapable of performing her past relevant work. AR at 22.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform "jobs existing in significant numbers in the national economy," including companion, usher/lobby attendant,

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

and lot attendant. AR at 23. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 24.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. AR at 9-11. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing

the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A.  The ALJ Erred at Step Five

Plaintiff argues that the ALJ erred at step five in finding that plaintiff could perform the jobs of companion, usher/lobby attendant, and lot attendant. JS at 5-12. Specifically, plaintiff contends that these jobs require overhead reaching, which the ALJ precluded, and the ALJ failed to ask the vocational expert ("VE") about this conflict. *Id.* at 8-12. The court agrees that the ALJ erred in not adequately inquiring about the conflict between the VE's testimony and the job descriptions in the Dictionary of Occupational Titles, and in failing to resolve the conflict before relying on the VE's testimony.

At step five of the sequential evaluation, the ALJ has the burden to identify jobs that exist in significant numbers in the national economy that the claimant can perform. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ may rely on the testimony of a vocational expert, who can assess the claimant's limitations and identify any existing jobs within the claimant's RFC. Social Security Ruling ("SSR") 83-12.[2] The ALJ may also rely on the Dictionary of Occupational Titles ("DOT") "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273,

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1276 (9th Cir. 1990) (citations omitted); *Johnson*, 60 F.3d at 1435; *see also* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job information).

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons for any conflict. *Massachi*, 486 F.3d at 1152-53 (citing SSR 00-4p).

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> - Ask the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and
> - If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p. In order for an ALJ to accept VE testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (internal quotation marks and citation omitted). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

Here, in determining plaintiff's RFC, the ALJ precluded plaintiff from overhead reaching bilaterally. AR at 20. At the hearing, the ALJ included this restriction in the hypothetical posed to the VE. AR at 44. The VE then testified

1  that plaintiff could perform the jobs of companion (DOT 309.677-010),
2  usher/lobby attendant (DOT 344.677-014), and lot attendant (DOT 915.667-010).
3  *Id.* Although the transcript reflects that many portions of the hearing were
4  inaudible to the transcriber, the transcript does show that the ALJ asked the VE
5  whether her opinion was "based on the DOT," to which the VE responded, "Yes."
6  AR at 44-45.
7      The problem here is that the VE's testimony was wrong, or at least
8  incomplete. Under the DOT descriptions, the jobs of companion, usher/lobby
9  attendant, and lot attendant may require overhead reaching. Specifically, the DOT
10 describes these jobs as all requiring either frequent or occasional reaching, but
11 does not specify whether overhead bilateral reaching is required. *See* JS, Exh. 1.
12 The general requirement of "reaching" certainly does not preclude overhead
13 reaching. On the contrary, the DOT's "companion publication, the *Selected*
14 *Characteristics of Occupations Defined in the Revised Dictionary of Occupational*
15 *Titles*" ("*SCO*") (*see* SSR 00-4p), defines "reaching" as "'extending hand(s) and
16 arm(s) in any direction.'" *Mkhitaryan v. Astrue*, No. CV 09-6971, 2010 WL
17 1752162, at *3 (C.D. Cal. 2010) (quoting *SCO*, App. C (1993)) (emphasis
18 omitted); *see also* SSR 85-15 (defining "[r]eaching" as "extending the hands and
19 arms in any direction"). Reaching "in any direction" plainly encompasses
20 overhead reaching.
21     At a minimum, as found by the Seventh Circuit in a case in which the
22 claimant "could only 'occasionally reach above shoulder level'" and the VE
23 testified the claimant could perform a job that, under the DOT job description,
24 required frequent "reaching": "It is not clear to us whether the DOT's
25 requirements include reaching above shoulder level, and this is exactly the sort of
26 inconsistency the ALJ should have resolved with the expert's help." *Prochaska v.*
27 *Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). But this inconsistency was not
28

1  resolved in this case, just as it was not in *Prochaska*. Thus, the VE's testimony
2  that plaintiff here, who was precluded from overhead bilateral reaching, could do
3  jobs that require "reaching," and that this opinion was "based on the DOT" (*see*
4  AR at 44-45), was misleading at best.
5        The reason that the VE's testimony might generously be construed as
6  misleading rather than simply wrong is that the ALJ did not specifically ask the
7  VE whether her testimony conflicted in any respect with the DOT. Although the
8  ALJ approached her basic obligation to inquire whether the VE's testimony
9  conflicted with the DOT by asking whether the VE's opinions were "based on the
10 DOT" (*see* AR at 44), by not specifically asking about any conflicts, the ALJ
11 failed in her affirmative duty to inquire about conflicts. *See Prochaska*, 454 F.3d
12 at 735 (collecting cases from other circuits holding that SSR 00-4p "imposes 'an
13 affirmative duty on the part of an ALJ to inquire about conflicts between
14 vocational expert testimony and the DOT'") (citations omitted). The Ninth Circuit
15 cited to *Prochaska* and other cases in "join[ing] the Third, Seventh, and Tenth
16 Circuits" to hold that an ALJ must inquire into conflicts between a VE's testimony
17 and the DOT. *Massachi*, 486 F.3d at 1152.
18       Accordingly, the ALJ erred in the first instance by not directly asking the
19 VE whether her testimony conflicted with the DOT as required in every case by
20 SSR 00-4p and *Massachi*. Although failure to so inquire can be deemed harmless
21 error where there is no conflict or the VE provides sufficient support to justify
22 deviation from the DOT (*Massachi*, 486 F.3d at 1154 n.19), in this case there was
23 a conflict, as discussed above.
24       Moreover, even if the ALJ's question to the VE were sufficient to discharge
25 her initial obligation to inquire about a conflict, that was not the end of the ALJ's
26 obligations. The Ninth Circuit has cited to SSR 00-4p as "explicitly requiring that
27 the ALJ determine whether the expert's testimony deviates from the *Dictionary of*
28

1 *Occupational Titles* and whether there is a reasonable explanation for any
2 deviation." *Massachi*, 486 F.3d at 1153.  SSR 00-4p provides:
3     When vocational evidence provided by a VE or VS is not consistent
4     with information in the DOT, the adjudicator must resolve this
5     conflict before relying on the VE or VS evidence to support a
6     determination or decision that the individual is or is not disabled.
7     The adjudicator will explain in the determination or decision how he
8     or she resolved the conflict.  The adjudicator must explain the
9     resolution of the conflict irrespective of how the conflict was
10     identified.
11 SSR 00-4p.  Although the VE's testimony in this case deviated from the DOT, the
12 ALJ did not obtain an explanation for this deviation or even identify it.  Instead,
13 the ALJ erroneously found: "Pursuant to SSR 00-4p, the vocational expert's
14 testimony is consistent with the information contained in the Dictionary of
15 Occupational Titles."  *See* AR at 23.  In order to properly make such a finding, the
16 ALJ was required to obtain "persuasive evidence to support the deviation"
17 between the VE's testimony and the DOT.  *Pinto*, 249 F.3d at 846.  The record
18 here is utterly devoid of such evidence, or of any explanation by the ALJ of how
19 she resolved the conflict.  *See* AR at 23, 43-46.  She plainly did not resolve it.
20     Even where a VE wrongly testifies that there is no conflict, where "evidence
21 from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry:
22 an ALJ must obtain 'a reasonable explanation for the apparent conflict.'"
23 *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p).
24 Where the ALJ fails to obtain an explanation for and resolve an apparent conflict –
25 even where the VE did not identify the conflict – the ALJ errs.  *See Hernandez v.*
26 *Astrue*, No. CV 10-3142, 2011 WL 223595, at *2-5 (C.D. Cal. 2011) (where VE
27 incorrectly testified there was no conflict between her testimony and DOT, ALJ
28

erred in relying on VE's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan*, 2010 WL 1752162 at *3 ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

Here, defendant contends that the conflict between the VE's testimony and the DOT was only "arguable," and in any event was not sufficiently apparent to trigger the ALJ's duty to inquire further and determine whether there is an explanation or evidence to permit a deviation from the DOT, particularly given that counsel did not point out the conflict to the ALJ at the hearing. *See Overman*, 546 F.3d at 463 ("SSR 00-4p requires only that the ALJ investigate and resolve *apparent* conflicts" and therefore counsel's failure to point out conflicts means conflicts must have been "obvious enough that the ALJ should have picked up on them without any assistance").  This court finds, however, that the conflict here was both actual and apparent.

Defendant points to a case similar to this one in which another court found that the conflict was not sufficiently apparent to require the ALJ to clarify the discrepancy. *See Nelson v. Astrue*, No. C-10-0101, 2010 WL 4286316, at *3 (N.D. Cal. 2010) (VE testimony that claimant precluded from overhead reaching could perform jobs that DOT states require "reaching" conflicted with DOT, but conflict was not sufficiently apparent to require ALJ to clarify discrepancy).  But other cases have found conflicts just like this one to be apparent. *See, e.g.,* *Hernandez*, 2011 WL 223595, at *3 (there was an "apparent conflict" when VE testified that individual precluded from reaching above shoulder level could perform job defined by DOT as requiring frequent "reaching"); *Mkhitaryan*, 2010 WL 1752162 at *3 (there was "an apparent conflict" when VE found that claimant who was precluded from reaching above shoulder level could perform a job

1 requiring "reaching" according to DOT).  This court also finds that the conflict in
2 this case between the VE's testimony and the DOT job descriptions was apparent
3 based on the plain language in the DOT.
4      Accordingly, the ALJ erred at step five both in failing to adequately inquire
5 of the VE as to whether there was a conflict between her testimony and the DOT,
6 and in failing to obtain an explanation for and resolve the VE's deviation from the
7 DOT before the ALJ relied on the VE's testimony in finding plaintiff not disabled.
8 **B.**    **The ALJ Provided Clear and Convincing Reasons for Discounting**
9        **Plaintiff's Subjective Complaints**
10      Plaintiff argues that the ALJ failed to properly consider plaintiff's
11 testimony.  JS at 15-21.  Specifically, plaintiff contends that the ALJ failed to
12 conduct the two-step analysis properly and that lack of objective medical evidence
13 is an insufficient reason to discount plaintiff's testimony.  JS at 17-18.  The court
14 disagrees.
15      An ALJ must make specific credibility findings, supported by the record.
16 SSR 96-7p.  To determine whether testimony concerning symptoms is credible, an
17 ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-
18 36  (9th Cir. 2007).  First, an ALJ must determine whether a claimant produced
19 objective medical evidence of an underlying impairment "'which could reasonably
20 be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting
21 *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there
22 is no evidence of malingering, an "ALJ can reject the claimant's testimony about
23 the severity of her symptoms only by offering specific, clear and convincing
24 reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996);
25 *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  An ALJ may consider
26 several factors in weighing a claimant's credibility, including:  (1) ordinary
27 techniques of credibility evaluation such as a claimant's reputation for lying; (2)
28

the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d at 346-47.

Contrary to plaintiff's contentions, the ALJ properly conducted the two-step analysis. At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR at 22.

At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ found that plaintiff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the [RFC] assessment." *Id*. The ALJ provided two reasons for discounting plaintiff's credibility. *Id*. These reasons are clear and convincing.

First, as both plaintiff and defendant acknowledge, it is inferable that the ALJ discounted plaintiff's credibility on the basis that her testimony was not supported by the objective medical evidence. JS at 17, 23. The ALJ discussed the opinions of all the treating, examining, and State agency physicians, as well as plaintiff's testimony, and discounted plaintiff's testimony based on the medical records. AR at 21-22. While plaintiff is correct that lack of objective medical evidence cannot be the sole basis for rejecting plaintiff's testimony, it is a permissible factor to consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence is a factor the ALJ can consider in a credibility analysis).

Second, the ALJ notes that plaintiff's "treating physicians responded with treatment that is inconsistent with the medical response that would be expected if physicians found symptoms and limitations to be as severe as" she reported. AR at 22. "[E]vidence of 'conservative treatment' is sufficient to discount a

claimant's testimony regarding severity of an impairment." *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, the record indicates that, through the date of the hearing, plaintiff received only conservative treatment in the form of physical therapy and pain medication. *See Tommasetti*, 533 F.3d at 1040 (describing physical therapy and anti-inflammatory medication as conservative treatment); *see generally* AR 201-20, 284-314. While the ALJ noted that plaintiff was scheduled for neck surgery after the hearing, she also found the opinion of Dr. Thomas H. Jones, a neurosurgical consultative examiner, to be credible. AR at 21. Dr. Jones did not agree that plaintiff had cervical spondylosis or that surgical intervention was necessary, and recommended further evaluation and pain management. AR at 331-32. Because the evidence can reasonably support either affirming or reversing the ALJ's decision, the court must uphold the ALJ's decision. *Aukland,* 257 F.3d at 1035.

Accordingly, the ALJ provided clear and convincing reasons for discounting plaintiff's credibility.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were

properly evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to properly conduct the step five analysis.  On remand, the ALJ shall obtain an explanation from the vocational expert as to whether the jobs of companion, usher/lobby attendant, and lot attendant require bilateral overheard reaching, and shall resolve any conflicts with the DOT.  The ALJ shall then determine whether, at step five, plaintiff can perform work existing in significant numbers in the regional and national economies.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: April 25, 2012

SHERI PYM
United States Magistrate Judge